**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KAMILLA LONDON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 19-1518-MN-SRF |
| ) | |
| v. ) | |
| ) | |
| DELAWARE DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

### I. INTRODUCTION

Presently before the court in this civil rights case are motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Dana Metzger ("Metzger") and Marc Richman ("Richman") (D.I. 45)[1] and by defendants James Elder ("Elder") and Robert May ("May") (D.I. 50).[2] For the following reasons, the court recommends GRANTING the motion filed by Metzger and Richman, and GRANTING the motion filed by Elder and May.

---

[1] The briefing for the pending motion of Metzger and Richman is as follows: Defendants' opening brief (D.I. 46), London's answering brief (D.I. 56), and Defendants' reply brief (D.I. 58).

[2] The briefing for the pending motion of Elder and May is as follows: Defendants' opening brief (D.I. 51), London's answering brief (D.I. 57), and Defendants' reply brief (D.I. 59).

## II. BACKGROUND[3]

### a. Procedural History

On or about July 1, 2019,[4] plaintiff Kamilla London ("London"), acting *pro se*, initiated this action by filing a complaint and first amended complaint in the Delaware Court of Chancery against defendants Marc Richman, Ph.D ("Richman"), Bureau Chief Shane Troxler ("Troxler"), Warden Dana Metzger ("Metzger"), Deputy Warden Philip Parker ("Parker"), Major John Brennan ("Brennan"), Major Kevin Senato ("Senato"), Major Tonya Smith ("Smith"), Captain "John" Cessna ("Cessna"), Captain Randall Dotson ("Dotson"), Captain Ramon Taylor ("Taylor"), Lieutenant Matthew Stevenson ("Stevenson"), Lieutenant Mark Daum ("Daum"), Sergeant "John" Abernathy ("Abernathy"), Sergeant Angelina DeAllie ("DeAllie"), Sergeant Jason Arrington ("Arrington"), Officer Brent Dickerson ("Dickerson"), Loretta Edwards ("Edwards"), Stacey Hollis ("Hollis"), and Officer Megan McCarthy ("McCarthy") (collectively, the "Original Defendants"). (D.I. 1, Ex. A at ¶ 1) The Original Defendants removed the case to this court on August 14, 2019 and promptly moved to dismiss London's complaint. (D.I. 1; D.I. 3)

In August 2019, London filed a motion for the appointment of counsel, a motion for expedited proceedings, and a motion for an extension of time to respond to the motion to dismiss. (D.I. 8; D.I. 11; D.I. 12) The court granted London's motion for the appointment of counsel, denied the motions for expedited proceedings and for an extension of time, and stayed

---

[3] The facts in this section are based upon allegations in the third amended complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

[4] Defendants assert that the Court of Chancery's docket does not contain the envelope showing the date the complaint and first amended complaint were mailed, but defendants Richman and Troxler were served with both on July 19, 2019. (D.I. 1, Ex. A)

2

the case pending referral to a member of the Federal Civil Panel. (D.I. 13) The stay was lifted on September 19, 2019 upon the appointment of counsel. (D.I. 16)

On January 16, 2020, London filed a second amended complaint ("the SAC") against the Delaware Department of Corrections ("DDOC"), Metzger, Paola A. Munoz ("Munoz"), Richman, and Robin Timme-Belcher ("Timme-Belcher"). (D.I. 21) Accordingly, the court denied the Original Defendants' previous motion to dismiss as moot. (D.I. 22) On March 16, 2020, the DDOC, Metzger, and Richman filed a motion to dismiss the SAC. (D.I. 25) London thereafter filed a voluntary notice of dismissal with respect to a number of defendants, including the DDOC.[5] (D.I. 34) The court heard oral argument on the motion to dismiss on December 18, 2020 and issued a ruling from the bench granting the motion. (D.I. 40; 12/18/2020 Tr.; 12/18/2020 Minute Entry)

On February 1, 2021, London filed a third amended complaint ("the TAC") against defendants Metzger, Munoz, Richman, Timme-Belcher, James Elder ("Elder"), and Robert May ("May") (collectively, "Defendants"). (D.I. 44) Metzger and Richman filed a joint motion to dismiss the TAC for failure to state a claim on February 15, 2021, and Elder and May filed a similar joint motion to dismiss on March 1, 2021. (D.I. 45; D.I. 50) Upon completion of briefing London requested oral argument on both of the pending motions to dismiss. (D.I. 60) The case was thereafter referred to the undersigned judicial officer, and an oral argument on the pending motions was held on August 4, 2021. (D.I. 62; 8/4/2021 Minute Entry)

---

[5] The notice of voluntary dismissal included the DDOC, Members of the Gender Dysphoria Consultation Group, Troxler, Scarsborough, Parker, Brennan, Senato, Smith, Cessna, Abernathy, DeAllie, Stevenson, Dotson, Arrington, Dickerson, Edwards, Hollis, Daum, McCarthy, Taylor, and Nurse Practitioner Carla Cooper (Miller). (D.I. 34)

3

### b. The Parties

London is an inmate at the James T. Vaughn Correctional Center ("JTVCC"). (D.I. 44 at ¶ 1) London was assigned as a male at birth but self-identifies as female. (*Id.* at ¶ 2)

Metzger was an employee of the DDOC and served as JTVCC Warden from May 2017 until his retirement on February 10, 2020. (*Id.* at ¶ 11) Richman served as Chief of the Bureau of Correctional Health Care Services for the DDOC from 2015 through his retirement on October 1, 2019. (*Id.* at ¶ 13) Because Metzger and Richman are retired, the court dismissed London's claims against them for damages in their official capacities. (12/18/2020 Tr. at 31:14-24) ("[A]ny claims for damages against the moving Defendants in their official capacity are dismissed."). In the TAC, London brings this action against Metzger and Richman only in their individual capacities and seeks compensatory and punitive damages. (D.I. 44 at ¶ 7)

May is Metzger's successor and serves as the current Warden of JTVCC. (*Id.* at ¶ 10) Richman was succeeded by Elder. (*Id.* at ¶ 12) London alleges in the TAC that Elder serves as the Chief of an expanded Bureau of Healthcare, Substance Use Disorder and Mental Health Services. (*Id.* at ¶ 12 & n.5) However, Elder denies that he currently serves as Bureau Chief. (D.I. 51 at 6; *see* § IV.b, *infra*) As the successors of Metzger and Richman, respectively, May and Elder were automatically substituted as defendants in their official capacities pursuant to Federal Rule of Civil Procedure 25(d). (D.I. 44 at ¶ 10 n.4; ¶ 12 n.5) London sues May and Elder in their official capacities in connection with her request for injunctive and declaratory relief. (*Id.* at ¶ 7)

Munoz is London's treating psychologist at JTVCC. (*Id.* at ¶ 14) Munoz was employed by the Connections Community Support Program ("CCSP"), a subcontractor of JTVCC, as the Director of Mental Health Services and as a staff psychologist. (*Id.*) Timme-Belcher was also

4

employed by CCSP and served as the Chief Psychologist of JTVCC from October 2012 through January 2020. (*Id.* at ¶ 15) On April 21, 2021, Munoz and Timme-Belcher filed a suggestion of bankruptcy as to CCSP. (D.I. 55) Accordingly, the court stayed all proceedings against CCSP and its employees pursuant to 11 U.S.C. § 362(a).[6] (D.I. 61)

### c. Facts

In April 2011, London was diagnosed with Gender Identity Disorder, which is now referred to as Gender Dysphoria. (D.I. 44 at ¶ 21) The World Professional Association for Transgender Health ("WPATH") recommends that treatment for Gender Dysphoria should include "psychotherapy to address the negative impacts and stigmas associated with living as a transgender person; hormone therapy; living full time as one's desired gender," and gender confirmation surgery ("GCS").[7] (*Id.* at ¶¶ 4, 26–29) London currently receives psychotherapy and hormone therapy, but neither "effectively mitigates the severity of her Gender Dysphoria." (*Id.* at ¶¶ 29 n.8)

On January 20, 2018, London wrote a letter ("the January 2018 letter")[8] to Munoz and Metzger describing her worsening Gender Dysphoria symptoms and her frustration with delays in receiving treatment, and providing notice of her intent to initiate a civil lawsuit within thirty days if her needs were not met before then. (*Id.* at ¶ 38, Ex. 1)

The multidisciplinary team ("MDT") is a team of medical and security administrators who meet on a weekly basis to discuss inmates receiving medical care. (*Id.* at ¶ 39) Metzger

---

[6] Munoz and Timme-Belcher have not joined the motions presently before the court. (D.I. 45; D.I. 50) Pursuant to the bankruptcy stay, this Report and Recommendation does not address any claims asserted against them in the TAC.

[7] Gender confirmation surgery ("GCS") is also referred to as "sex reassignment surgery." (D.I. 44 at ¶ 4 n.3)

[8] The letter is attached to the TAC as Exhibit 1 and is incorporated by reference. (D.I. 44 at ¶ 38, Ex. 1)

5

attended this weekly meeting during his tenure, and May attends them now. (*Id.*) Munoz also attended. (*Id.*) After London sent the January 2018 letter, Metzger and Munoz discussed Munoz's treatment plan for London each week. (*Id.*)

On October 17, 2018, London submitted Grievance No. 424836,[9] in which she requested "an investigation and treatment to alleviate" her suffering caused by Gender Dysphoria. (*Id.*, Ex. 2) London noted that she had "filed numerous sick calls, and written requests via sick calls" to the Gender Dysphoria Consultation Group, concerning her "distress and mental and emotional anguish" caused by her Gender Dysphoria symptoms. (*Id.* at ¶ 40, Ex. 2) London also noted her repeated requests for "genital reconstructive surgery," but she has received no response to Grievance No. 424836. (*Id.* at ¶ 40)

On January 11, 2019, London submitted Grievance No. 434598,[10] in which she reiterated her continued suffering and desire to have GCS and noted that Munoz and Timme-Belcher had told her "lesser intrusive measures [were] being first considered." (*Id.* at ¶ 41, Ex. 3) Policy A-10[11] sets forth three steps of the inmate healthcare grievance process at JTVCC: "i) an informal resolution; ii) a Medical Grievance Committee ('MGC') Hearing; iii) and an appeal of an MGC recommendation." (*Id.* at ¶ 44) The procedures listed in Policy A-10 were followed with respect to Grievance No. 434598. (*Id.* at ¶ 45) Munoz authored an informal resolution to Grievance No. 434598 on February 7, 2019. (*Id.*, Ex. 3) Munoz noted Timme-Belcher's prior belief that it was "highly likely that at least some of [London's] dysphoric symptomology and distress [were] the

---

[9] Grievance No. 424836 is attached to the TAC as Exhibit 2 and is incorporated by reference. (D.I. 44 at ¶ 40, Ex. 2)
[10] Grievance No. 434598 is attached to the TAC as Exhibit 3 and is incorporated by reference. (D.I. 44 at ¶ 41, Ex. 3)
[11] Policy A-11 was in effect on January 11, 2019, when London filed Grievance No. 434598. (D.I. 44 at ¶ 44 n. 10) However, Policy A-11 is substantially similar to presently effective Policy A-10, which was approved by Richman. (*Id.* at ¶ 44, 44 n.10)

6

result" of the fact that London was being housed in the maximum-security side of the prison as a result of disciplinary infractions. (*Id.* at ¶ 42, Ex. 3) Munoz went on to note that London was then being housed in a medium security building and was informed to resubmit her request for GCS for reconsideration in March. (*Id.*, Ex. 3)

At some point after Munoz issued the informal resolution, London attended an MGC Hearing. (*Id.* at ¶ 46) During the hearing, the MGC, comprised of a minimum of three members of the health service staff, including one licensed healthcare professional, reviewed the pertinent sections of London's health records and discussed the information contained in Grievance No. 434598. (*Id.*) The MGC denied Grievance No. 434598 on February 27, 2019 ("the MGC Decision"). (*Id.*)

London appealed the MGC Decision, which brought Grievance No. 434598 to the third and final step in the process described in Policy A-10. (*Id.* at ¶ 47) On March 4, 2019, the Bureau Grievance Officer recommended denying Grievance No. 434598 and submitted the recommendation to Richman to render a final decision. (*Id.*) On March 11, 2019, after reviewing Grievance No. 434598, the MGC Decision, and the Bureau Grievance Officer's March 4, 2019 recommendation, Richman rendered a final decision and denied Grievance No. 434598. (*Id.*, Ex. 3)

London sent another letter directly to Metzger requesting an in-person meeting with him to discuss her ongoing Gender Dysphoria. (*Id.* at ¶ 51) In a letter dated June 17, 2019 ("the June 2019 letter"), Metzger responded that a face-to-face meeting would not be possible, but he would continue to "watch over" London's situation. (*Id.*)

In all, London alleges that she has "repeatedly request[ed] that her JTVCC caregivers provide her with GCS, or at the very least with the opportunity to consult a physician

specializing in transgender health on the appropriateness of GCS to treat her Gender Dysphoria." (*Id.* at ¶ 5) However, all of London's requests for GCS or a GCS consultation have been denied. (*Id.* at ¶ 6) Accordingly, London alleges Defendants violated the Eighth Amendment of the United States Constitution by failing to approve her requests for GCS, giving rise to claims against Defendants pursuant to 42 U.S.C. § 1983. (*Id.* at ¶¶ 60–75)

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead

8

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### a. Motion to Dismiss by Metzger and Richman

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). To successfully plead a claim under 42 U.S.C. § 1983 for an Eighth Amendment medical care violation, a plaintiff must plausibly allege "(1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *Parkell v. Pierce*, C.A. No. 17-157-LPS, 2018 WL 3104406, at *5 (D. Del. June 22, 2018) (citing *Estelle*, 429 U.S. at 103–05; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d. Cir. 1999)).

The parties do not dispute that Gender Dysphoria is a serious medical need. (D.I. 46 at 11 n. 8; D.I. 56 at 8) In April 2011, London was diagnosed with Gender Dysphoria by a clinical neuropsychologist. (D.I. 1 at ¶ 21) Therefore, London has plausibly alleged the existence of a serious medical need. *See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (noting that a medial need is "serious" if it was "diagnosed by a physician as requiring treatment").

The focus of the parties' dispute is on whether London plausibly alleges Metzger and Richman acted with deliberate indifference to her Gender Dysphoria. A prison official is deliberately indifferent if the official knows that a prisoner faces a substantial risk of serious

harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In addition, to successfully plead a civil rights violation, the plaintiff must plausibly allege the defendant's "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A plaintiff can plead a defendant's personal involvement "through allegations of personal direction or of actual knowledge and acquiescence." *Id.*

### i. Metzger[12]

Metzger raises two arguments for dismissal of London's deliberate indifference claims against him. First, he argues that London fails to plausibly allege that he had a reason to believe or actual knowledge that London was being mistreated or not treated at all. (D.I. 46 at 10) In response, London argues that the TAC plausibly alleges Metzger's personal involvement in her alleged constitutional deprivations based on the January 2018 letter, the June 2019 letter, Metzger's attendance at MDT meetings, and Metzger's review of Grievance No. 434598. (D.I. 56 at 10–16)

Second, Metzger argues that London's deliberate indifference claim against him fails because, as a non-medical prison official, he was allowed to rely on the professional judgment of the medical staff. (D.I. 46 at 10) But London responds that Metzger's reliance on the opinions of medical professionals does not absolve him of § 1983 liability when Metzger had "actual knowledge" or at least "a reason to believe" that those medical professionals delayed providing

---

[12] In response to Metzger's argument about whether the TAC plausibly alleges that he had reason to believe or actual knowledge of London's being mistreated or not treated for Gender Dysphoria, London argues that the TAC sufficiently alleges his personal involvement. (*Compare* D.I. 46 at 13–16, *with* D.I. 56 at 10–16)

adequate medical care to London for a non-medical reason—her housing. Specifically, London explains that the medical professionals recommended deferring consideration of GCS based on the expectation that London would be moved from maximum security to less restrictive housing, and this move would likely result in a reduction of London's dysphoric symptoms. (D.I. 56 at 19) The court addresses these arguments together because they are intertwined legally and factually.

The TAC contains facially plausible allegations related to Metzger's actual knowledge. Allegations in the TAC regarding the January 2018 letter, the June 2019 letter,[13] Metzger's weekly attendance at MDT meetings, and his review of Grievance No. 434598 plausibly show his knowledge of London's treatment and London's opinion that the treatment was inadequate. (D.I. 44 at ¶¶ 11, 38–39, 51; Exs. 1, 3); *see also Smith v. D'Ilio*, 2020 WL 2079413, at *4 (D.N.J. Apr. 29, 2020) (holding that "repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation" created a factual issue as to whether a reasonable jury could conclude that the defendant had personal involvement in the plaintiff's unconstitutional confinement) (emphasis in original).

Nonetheless, these four instances of Metzger's knowledge regarding London's treatment are insufficient to plausibly plead that he knew or had reason to believe the treatment received by

---

[13] Metzger attaches what he purports is the June 2019 letter to his opening brief and requests that the court consider it without converting his motion to a summary judgment motion. (*See id.* at 14 n.9) London does not oppose Metzger's request. (*See* D.I. 56) London also fails to clarify whether the "June 2019 letter" refers to her letter to Metzger or Metzger's responsive letter dated June 17, 2019. (*See id.* at 7, 11) However, London explicitly relies on Metzger's responsive letter in the TAC. (*See* D.I. 44 at ¶ 51) Therefore, the court considers the June 17, 2019 letter attached to Metzger's brief without converting Metzger's motion to dismiss to a motion for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("A document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotations, citations, alterations, and emphasis omitted).

London was inadequate. Prison administrators like Metzger are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993). "[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). An exception to this general rule arises when a non-medical prison official has "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.*

The TAC's allegations regarding the January 2018 letter, the June 2019 letter, the MDT meetings, and Grievance No. 434598 do not show that Metzger had reason to believe that London was being mistreated.[14] (*See* D.I. 44 at ¶¶ 38–53) As alleged in the TAC, London received continuous treatment, including psychotherapy, hormone therapy, voice training, and laser hair removal. (*Id.* at ¶¶ 5, 32–34, 36) London's disagreement with the prescribed medical treatment does not support a deliberate indifference claim against Metzger. *See Spruill*, 372 F.3d at 235 (noting that "'[M]ere disagreement as to the proper medical treatment' is also insufficient" to state an Eight Amendment claim); *Hartmann v. Carroll*, 929 F. Supp. 2d 321, 328 (D. Del. 2013), *aff'd*, 582 Fed. Appx. 111 (3d Cir. 2014), ("'[A] prisoner has no right to choose a specific form of medical treatment,' so long as the treatment provided is reasonable."); *McCray v. Williams*, 357 F. Supp. 2d 774 (D. Del. 2005) ("The plaintiff may disagree with the medical treatment which he is receiving, however, this does not support a § 1983 claim."); *see* 12/18/2020 Tr. at 33:2-3 ("[I]nmates are not guaranteed the right to choose a specific form of

---

[14] During the August 4, 2021 oral argument, counsel for London confirmed that London is not asserting any claims based on a failure to treat. (8/4/2021 Tr.)

medical treatment."). Here, "[t]he crux of Plaintiff's claims [remains] that the treatment she desires to receive is different than the course of treatment set forth by" the medical professionals. (12/18/2020 Tr. at 33:25-34:3)

London's argument that Metzger had reason to believe her treatment options were delayed for a non-medical reason also lacks merit. (D.I. 56 at 16–19) The Third Circuit has noted that "if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). An example of a non-medical reason for delaying treatment is a patient's inability to pay. *See Ancata*, 769 F.2d at 704. Here, however, the TAC alleges that the medical professionals involved in London's treatment opined that "Ms. London[']s housing has a direct impact on her perceived lack of ability to express her experienced gender adequately, and dysphoria is then exacerbated." (D.I. 44 at ¶ 42) This discussion of the impact of London's housing situation on her psychological wellbeing in the context of her Gender Dysphoria cannot plausibly be characterized as a non-medical reason for purposes of Metzger's knowledge. To the contrary, based upon the pleadings at this stage, the opinions of the medical professionals align with the Standards of Care for the treatment of Gender Dysphoria outlined in the TAC, which specifies "psychotherapy to address the negative impacts and stigmas associated with living as a transgender person" and "living full time as one's desired gender." (*Id.* at ¶ 29) As a non-medical professional, Metzger was entitled to credit the opinions of medical professionals directly tying the severity of London's symptoms to her housing situation. *See Spruill v. Gillis*, 372 F.3d at 236.

Cases evaluating deliberate indifference resulting from a delay of necessary medical treatment for non-medical reasons generally arise in the context of medical defendants, as opposed to non-medical professionals such as Metzger. *See Ancata*, 769 F.2d at 703–04; *see also Johnson v. Coleman*, 506 F. App'x 125, 127–28 (3d Cir. 2012) (upholding district court's dismissal of deliberate indifference claim asserted against doctor where the plaintiff alleged disagreement with doctor's treatment plan). London cannot state a deliberate indifference claim against Metzger based on his failure to "pursue any inquiry into adequate treatment for" her where the facially plausible allegations show that he relied on the opinions of the medical professionals who were treating her. (D.I. 44 at ¶ 67) The TAC does not plead facts suggesting that Metzger, as a non-medical defendant, had reason to question the treatment plan proposed by medical professionals who tied their opinions to the symptoms of London's diagnosed condition. Viewing the pleading in the light most favorable to London, at best, Metzger was aware that London disagreed with the medical professionals' recommendation to defer her desired surgery.

For these reasons, the court recommends granting Metzger's motion and dismissing London's claims against him. *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 213–14 (3d Cir. 2017) (affirming dismissal of deliberate indifference claims against non-medical prison officials where they "deferred to the judgment of medical personnel").

### ii. Richman

Richman argues that allegations in the TAC about his participation in an after-the-fact review of her grievance are insufficient to plead his personal involvement. (D.I. 46 at 18–19) In response, London argues the TAC plausibly states that Richman reviewed and denied Grievance No. 434598, which describes London's suffering and the insufficiency of her treatment, and which the TAC incorporates by reference. (*See* D.I. 56 at 19–20) Because Richman's only

14

personal involvement in the alleged deprivation of London's rights is his denial of Grievance No. 434598, the TAC fails to state a deliberate indifference claim against him. *See Smith v. D'Ilio*, 2020 WL 2079413, at *4 (D.N.J. Apr. 29, 2020) ("Generally, a supervisory defendant's mere participation in the grievance process, without more, is insufficient to state a claim."); *Steedley v. McBride*, C.A. No. 10-215-GMS, 2014 WL 4461110, at *1 (D. Del. Sept. 9, 2014) ("[P]articipation in the after-the-fact review of a grievance is not enough to establish personal involvement."). Therefore, the court also recommends granting Richman's motion and dismissing London's claim against him.

### b. Motion to Dismiss by Elder and May

#### i. Elder

The parties do not dispute that Elder is no longer employed by DDOC. (D.I. 51 at 6; D.I. 57 at 7–8)[15] Elder argues London's claims against him should be dismissed because he is no longer employed by the DDOC and cannot carry out the injunctive relief sought in the TAC. (D.I. 51 at 5–6) In response, London argues her claims against Elder are "intrinsically [brought] against the office" he formerly occupied, and they survive regardless of whether he holds the office now. (D.I. 57 at 7–8)

Elder is a party to the instant suit only in his official capacity as Richman's successor pursuant to Fed. R. Civ. P. 25(d). (D.I. 44 at ¶ 12 n.5) Because London has failed to state a claim against Richman for the reasons set forth at § IV.a.ii, *supra*, London's claims against Elder cannot survive. Moreover, to the extent that London argues Elder is liable for the approval of

---

[15] Elder requests the court take judicial notice of an attachment to Elder's opening brief, which he claims is a government website showing that the Bureau Chief position he previously occupied is currently vacant. (D.I. 51 at 6, Ex. A) London does not dispute the authenticity of the record. (D.I. 57) The court takes judicial notice of the vacancy as a matter of public record. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

15

Policy A-10 (D.I. 57 at 9), the court notes that the TAC lacks any allegation that Policy A-10 caused London's constitutional deprivation. *See Johnson v. One Unknown Female Officer*, 2011 WL 1154528, at *3 n.2 (D. Del. Mar. 29, 2011) ("A municipality may only be held liable under § 1983 for monetary damages and prospective relief when the execution of a government's policy or custom inflicts the injury.").

### ii. May

During the August 4, 2021 oral argument on the pending motion to dismiss, counsel for Defendants withdrew the *Monell* claim[16] with respect to defendant May. (8/4/2021 Tr.) Accordingly, the court need not issue a ruling on the pending motion to dismiss as it pertains to May.

### iii. The Scope of London's Requested Equitable Relief

Lastly, Elder and May argue London's request for declaratory relief should be dismissed because it is not narrowly drawn. (*See* D.I. 51 at 7–8; D.I. 59 at 5) London argues the declaratory relief she seeks is narrowly drawn and proportional to the deprivation of constitutional rights she has experienced. (D.I. 57 at 12–14) The court recommends finding this argument premature because a plaintiff may seek alternative forms of relief at the pleadings stage. Moreover, at oral argument, Defendants stated that they were prepared to withdraw this argument. (8/4/2021 Tr.) Thus, the court will not consider the argument at this time.

---

[16] In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held a municipality cannot be found liable for § 1983 claims on a theory of *respondeat superior. Id.* at 694. Rather, a municipality can only be held liable when the execution of its policy or custom inflicts the injury. *Id.* In addition, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability on the City under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985).

16

## V.    CONCLUSION

For the foregoing reasons, the court recommends GRANTING the motions filed by Metzger and Richman and Elder, respectively, WITH PREJUDICE.[17]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  See Sincavage v. Barnhart, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); Henderson v. Carlson, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 5, 2021

Sherry R. Fallon
United States Magistrate Judge

---

[17] This is London's third attempt to plead a deliberate indifference claim against Metzger and Richman. When the court dismissed London's claim against Metzger and Richman without prejudice in the prior complaint, the court noted that it had told London what she needed to plead for her claims against Metzger and Richman to survive. (12/18/2020 Tr. at 39:18–40:3) The court recommends dismissal with prejudice because, despite containing more background information regarding Metzger and Richman, the reasons London's claims in the TAC fail are the same reasons the court granted dismissal with respect to the prior operative complaint. (See id. at 32:5–35:3)

17