IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAMILLA LONDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1518 (MN) |
| | ) | |
| DELAWARE DEPARTMENT OF CORRECTIONS, Warden DANA METZGER, PAOLA A. MUNOZ, MARC RICHMAN, ROBIN O. TIMME-BELCHER, in their individual and official capacities, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Curtis P. Bounds, Stephen B. Brauerman, Sarah T. Andrade, BAYARD, P.A., Wilmington, DE;– Attorneys for Plaintiff

Rebecca Song, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE– Attorneys for Defendant.

September 20, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the Objections of Plaintiff Kamilla London ("Plaintiff" or "London") (D.I. 68) to Magistrate Judge Sherry Fallon's August 5, 2021 Report and Recommendation (D.I. 66, "the Report").  The Report recommends granting the motions to dismiss filed by defendants Dana Metzger and Marc Richman (D.I. 45) and by defendants James Elder and Robert May. (D.I. 50).  The Court has reviewed the Report (D.I. 66), Plaintiff's objections (D.I. 68) and Defendants' response thereto (D.I. 70), and has considered *de novo* the relevant portions of both motions as well as the briefing submitted with each.  (D.I. 46, 51, 56, 57, 58, 59).  The Court has also afforded reasoned consideration to any unobjected to portions of the Report.  *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).  For the reasons set forth in this opinion, Plaintiff's Objections to the Report are OVERRULED, the Report is ADOPTED and the motions to dismiss of Defendants Metzger and Richman and of Defendant Elder[1] are GRANTED.  The Complaint as to Metzger, Richman and Elder is dismissed with prejudice.

**I.     BACKGROUND**

The Report sets forth a detailed description of the factual and procedural background of this matter.  (D.I. 66 at 2-3; 5-8).  The parties have not objected to any of those sections of the Report and the Court's reasoned consideration finds no clear error.  The Court adopts those sections and restates them here:

---

[1]     During the argument before Judge Fallon, counsel for Defendant May withdrew the motion as to May.  Thus, although the Court grants the motion to dismiss (D.I. 50), the case will continue against May.

a. **Procedural History**

On or about July 1, 2019,[2] plaintiff Kamilla London ("London"), acting *pro se,* initiated this action by filing a complaint and first amended complaint in the Delaware Court of Chancery against defendants Marc Richman, Ph.D ("Richman"), Bureau Chief Shane Troxler ("Troxler"), Warden Dana Metzger ("Metzger"), Deputy Warden Philip Parker ("Parker"), Major John Brennan ("Brennan"), Major Kevin Senato ("Senato"), Major Tonya Smith ("Smith"), Captain "John" Cessna ("Cessna"), Captain Randall Dotson ("Dotson"), Captain Ramon Taylor ("Taylor"), Lieutenant Matthew Stevenson ("Stevenson"), Lieutenant Mark Daum ("Daum"), Sergeant "John" Abernathy ("Abernathy"), Sergeant Angelina DeAllie ("DeAllie"), Sergeant Jason Arrington ("Arrington"), Officer Brent Dickerson ("Dickerson"), Loretta Edwards ("Edwards"), Stacey Hollis ("Hollis"), and Officer Megan McCarthy ("McCarthy") (collectively, the "Original Defendants"). (D.I. 1, Ex. A at ¶ 1) The Original Defendants removed the case to this court on August 14, 2019 and promptly moved to dismiss London's complaint. (D.I. 1; D.I. 3)

In August 2019, London filed a motion for the appointment of counsel, a motion for expedited proceedings, and a motion for an extension of time to respond to the motion to dismiss. (D.I. 8; D.I. 11; D.I. 12) The court granted London's motion for the appointment of counsel, denied the motions for expedited proceedings and for an extension of time, and stayed the case pending referral to a member of the Federal Civil Panel. (D.I. 13) The stay was lifted on September 19, 2019 upon the appointment of counsel. (D.I. 16)

On January 16, 2020, London filed a second amended complaint ("the SAC") against the Delaware Department of Corrections ("DDOC"), Metzger, Paola A. Munoz ("Munoz"), Richman, and Robin Timme-Belcher ("Timme-Belcher"). (D.I. 21) Accordingly, the court denied the Original Defendants' previous motion to dismiss as moot. (D.I. 22) On March 16, 2020, the DDOC, Metzger, and Richman filed a motion to dismiss the SAC. (D.I. 25) London thereafter filed a voluntary notice of dismissal with respect to a number of defendants, including the DDOC.[3] (D.I. 34) The court heard oral argument on the motion to dismiss on December 18, 2020 and issued a ruling from the bench granting the motion. (D.I. 40; 12/18/2020 Tr.; 12/18/2020 Minute Entry)

---

[2]   Defendants assert that the Court of Chancery's docket does not contain the envelope showing the date the complaint and first amended complaint were mailed, but defendants Richman and Troxler were served with both on July 19, 2019. (D.1. 1, Ex. A).

[3]   The notice of voluntary dismissal included the DDOC, Members of the Gender Dysphoria Consultation Group, Troxler, Scarsborough, Parker, Brennan, Senato, Smith, Cessna, Abernathy, DeAllie, Stevenson, Dotson, Arrington, Dickerson, Edwards, Hollis, Daum, McCarthy, Taylor, and Nurse Practitioner Carla Cooper (Miller). (D.I. 34)

On February 1, 2021, London filed a third amended complaint ("the TAC") against defendants Metzger, Munoz, Richman, Timme-Belcher, James Elder ("Elder"), and Robert May ("May") (collectively, "Defendants"). (D.I. 44) Metzger and Richman filed a joint motion to dismiss the TAC for failure to state a claim on February 15, 2021, and Elder and May filed a similar joint motion to dismiss on March 1, 2021. (D.I. 45; D.I. 50) Upon completion of briefing London requested oral argument on both of the pending motions to dismiss. (D.I. 60) The case was thereafter referred to the undersigned judicial officer, and an oral argument on the pending motions was held on August 4, 2021. (D.I. 62; 8/4/2021 Minute Entry)

b.   **The Parties**

London is an inmate at the James T. Vaughn Correctional Center ("JTVCC"). (D.I. 44 at ¶ 1 ) London was assigned as a male at birth but self-identifies as female. (*Id*. at ¶ 2)

Metzger was an employee of the DDOC and served as JTVCC Warden from May 2017 until his retirement on February 10, 2020. (*Id* at ¶ 11) Richman served as Chief of the Bureau of Correctional Health Care Services for the DDOC from 2015 through his retirement on October 1, 2019. (*Id.* at ¶ 13) Because Metzger and Richman are retired, the court dismissed London's claims against them for damages in their official capacities. (12/18/2020 Tr. at 31: 14-24) ("[A]ny claims for damages against the moving Defendants in their official capacity are dismissed."). In the TAC, London brings this action against Metzger and Richman only in their individual capacities and seeks compensatory and punitive damages. (D.I. 44 at ¶ 7)

May is Metzger's successor and serves as the current Warden of JTVCC. (*Id.* at ¶ 10) Richman was succeeded by Elder. (*Id.* at ¶ 12) London alleges in the TAC that Elder serves as the Chief of an expanded Bureau of Healthcare, Substance Use Disorder and Mental Health Services. (*Id.* at ¶ 12 & n.5) However, Elder denies that he currently serves as Bureau Chief. (D.I. 51 at 6; see § IV.b, infra) As the successors of Metzger and Richman, respectively, May and Elder were automatically substituted as defendants in their official capacities pursuant to Federal Rule of Civil Procedure 25(d). (D.I. 44 at ¶ 10 n.4; ¶ 12 n.5) London sues May and Elder in their official capacities in connection with her request for injunctive and declaratory relief. (*Id.* at ¶ 7)

Munoz is London's treating psychologist at JTVCC. (*Id.* at ¶ 14) Munoz was employed by the Connections Community Support Program ("CCSP"), a subcontractor of JTVCC, as the Director of Mental Health Services and as a staff psychologist. (*Id.*) Timme-Belcher was also employed by CCSP and served as the Chief Psychologist of JTVCC from October 2012 through January 2020. (*Id.* at ¶ 15)  On April 21, 2021, Munoz and Timme-Belcher filed a suggestion of

3

bankruptcy as to CCSP. (D.I. 55) Accordingly, the court stayed all proceedings against CCSP and its employees pursuant to 11 U.S.C. § 362(a).[4] (D.I. 61)

**c.     Facts**

In April 2011, London was diagnosed with Gender Identity Disorder, which is now referred to as Gender Dysphoria. (D.I. 44 at ¶ 21) The World Professional Association for Transgender Health ("WPATH") recommends that treatment for Gender Dysphoria should include "psychotherapy to address the negative impacts and stigmas associated with living as a transgender person; hormone therapy; living full time as one's desired gender," and gender confirmation surgery ("GCS").[5] *(Id.* at ¶¶ 4, 26- 29) London currently receives psychotherapy and hormone therapy, but neither "effectively mitigates the severity of her Gender Dysphoria." *(Id.* at ¶ 29 n.8)

On January 20, 2018, London wrote a letter ("the January 2018 letter")[6] to Munoz and Metzger describing her worsening Gender Dysphoria symptoms and her frustration with delays in receiving treatment, and providing notice of her intent to initiate a civil lawsuit within thirty days if her needs were not met before then. *(Id.* at ¶ 38, Ex. 1)

The multidisciplinary team ("MDT") is a team of medical and security administrators who meet on a weekly basis to discuss inmates receiving medical care. (*Id.* at ¶ 39) Metzger attended this weekly meeting during his tenure, and May attends them now. (*Id.*) Munoz also attended. (*Id.*) After London sent the January 2018 letter, Metzger and Munoz discussed Munoz's treatment plan for London each week. (*Id*)

On October 17, 2018, London submitted Grievance No. 424836,[7] in which she requested "an investigation and treatment to alleviate" her suffering caused by Gender Dysphoria. (*id.,* Ex. 2) London noted that she had "filed numerous sick calls, and written requests via sick calls" to the Gender Dysphoria Consultation Group, concerning her "distress and mental and emotional anguish" caused by her Gender Dysphoria symptoms. (*Id* at ¶ 40, Ex. 2) London also noted her repeated

---

[4]  Munoz and Timme-Belcher have not joined the motions presently before the court. (D.I. 45; D.I. 50) Pursuant to the bankruptcy stay, this Report and Recommendation does not address any claims asserted against them in the TAC.

[5]  Gender confirmation surgery ("GCS") is also referred to as "sex reassignment surgery." (D.I. 44 at ¶ 4 n.3).

[6]  The letter is attached to the TAC as Exhibit 1 and is incorporated by reference. (D.I. 44 at ¶ 38, Ex. 1)

[7]  Grievance No. 424836 is attached to the TAC as Exhibit 2 and is incorporated by reference. (D.I. 44 at ¶ 40, Ex. 2)

requests for "genital reconstructive surgery," but she has received no response to Grievance No. 424836. (*Id.* at ¶ 40)

On January 11, 2019, London submitted Grievance No. 434598,[8] in which she reiterated her continued suffering and desire to have GCS and noted that Munoz and Timme-Belcher had told her "lesser intrusive measures [were] being first considered." *(Id.* at ¶ 41, Ex. 3) Policy A-10[9] sets forth three steps of the inmate healthcare grievance process at JTVCC: "i) an informal resolution; ii) a Medical Grievance Committee ('MGC') Hearing; iii) and an appeal of an MGC recommendation." (*Id.* at 144) The procedures listed in Policy A-10 were followed with respect to Grievance No. 434598. (*Id.* at 45) Munoz authored an informal resolution to Grievance No. 434598 on February 7, 2019. (*Id.,* Ex. 3) Munoz noted Timme-Belcher's prior belief that it was "highly likely that at least some of [London's] dysphoric symptomology and distress [were] the result" of the fact that London was being housed in the maximum-security side of the prison as a result of disciplinary infractions. (*Id.* at, 42, Ex. 3) Munoz went on to note that London was then being housed in a medium security building and was informed to resubmit her request for GCS for reconsideration in March. (*Id.,* Ex. 3)

At some point after Munoz issued the informal resolution, London attended an MOC Hearing. (*Id.* at ¶ 46) During the hearing, the MOC, comprised of a minimum of three members of the health service staff, including one licensed healthcare professional, reviewed the pertinent sections of London's health records and discussed the information contained in Grievance No. 434598. (*Id.*) The MOC denied Grievance No. 434598 on February 27, 2019 ("the MOC Decision"). (*Id.*)

London appealed the MOC Decision, which brought Grievance No. 434598 to the third and final step in the process described in Policy A-10. (*Id.* at, 4 7) On March 4, 2019, the Bureau Grievance Officer recommended denying Grievance No. 434598 and submitted the recommendation to Richman to render a final decision. (*Id.*) On March 11, 2019, after reviewing Grievance No. 434598, the MOC Decision, and the Bureau Grievance Officer's March 4, 2019 recommendation, Richman rendered a final decision and denied Grievance No. 434598. (*Id.,* Ex. 3)

London sent another letter directly to Metzger requesting an in-person meeting with him to discuss her ongoing Gender Dysphoria. (*Id.* at, 51) In a letter dated June 17, 2019 ("the June 2019 letter"), Metzger responded that a face-to-face

---

[8] Grievance No. 434598 is attached to the TAC as Exhibit 3 and is incorporated by reference. (D.I. 44 at ¶ 41, Ex. 3)

[9] Policy A-11 was in effect on January 11, 2019, when London filed Grievance No. 434598. (D.I. 44 at ¶ 44 n.10) However, Policy A-11 is substantially similar to presently effective Policy A-10, which was approved by Richman. (*Id.* at ¶ 44, 44 n.10)

5

meeting would not be possible, but he would continue to "watch over" London's situation. (*Id.*)

In all, London alleges that she has "repeatedly request[ ed] that her JTVCC caregivers provide her with GCS, or at the very least with the opportunity to consult a physician specializing in transgender health on the appropriateness of GCS to treat her Gender Dysphoria." (*Id.* at ¶ 5) However, all of London's requests for GCS or a GCS consultation have been denied. (*Id.* at ¶ 6) Accordingly, London alleges Defendants violated the Eighth Amendment of the United States Constitution by failing to approve her requests for GCS, giving rise to claims against Defendants pursuant to 42 U.S.C. § 1983. (*Id.* at ¶¶ 60-75)

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

    **B.**  **Review of Reports and Recommendations on Dispositive Motions**

  The power invested in a federal magistrate judge varies depending on whether the issue is dispositive or non-dispositive. "Unlike a nondispositive motion (such as a discovery motion), a motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *City of Long Branch*, 866 F.3d at 98-99 (citations omitted). Under this standard, a motion to dismiss under Rule 12(b)(6) is clearly dispositive.

**III.**  **DISCUSSION**

  The TAC asserts that Metzger, Richman and Elder failed to provide necessary medical treatment in violation of the Eighth Amendment and 42 U.S.C. § 1983. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To plead a claim under 42 U.S.C. § 1983 for an Eighth Amendment medical care violation, a plaintiff must plausibly allege "(1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *Parkell v. Pierce*, C.A. No. 17-157-LPS, 2018 WL 3104406, at *5 (D. Del. June 22, 2018) (citing *Estelle*, 429 U.S. at 103-05; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d. Cir. 1999)). There is no dispute that Gender Dysphoria is a serious medical need. (D.I. 46 at 11 n.8; D.I. 56 at 8). Nor is there a dispute that Plaintiff has been diagnosed with Gender Dysphoria by a clinical neuropsychologist (D.I. 46 at 11 n. 8; D.I. 56 at 8), and therefore, she has plausibly alleged the existence of a serious medical need. *See Monmouth Cty. Corr. Institutional*

*Inmates v. Lanzaro*, 834 F.2d 326, 34 7 (3d Cir. 1987) (noting that a medial need is "serious" if it was "diagnosed by a physician as requiring treatment").

The dispute centers on whether the TAC plausibly alleges that the Defendants that are the subject of the Report's recommendation (*i.e.,* Metzger, Richman and Elder) acted with deliberate indifference to Plaintiff's Gender Dysphoria. A prison official is deliberately indifferent if the official knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). In addition, to successfully plead a civil rights violation, the plaintiff must plausibly allege the defendant's "'personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A plaintiff can plead a defendant's personal involvement "'through allegations of personal direction or of actual knowledge and acquiescence.'" *Id.*

Plaintiff asserts that the Report erred in four ways: 1) recommending dismissal of Metzger as "contrary to the evidence" and Report's finding that Metzger had actual knowledge of harm suffered by Plaintiff; 2) determining that allegations that Defendant Richman denied a grievance with finality did not establish Richman's personal involvement; 3) confusing allegations, direct or circumstantial, that plausibly establish a prison official's actual knowledge of the risk of harm to the plaintiff with the elements of an exception to Section 1983 liability for prison officials who

8

defer to the judgment of medical experts; and 4) failing to recognize that Rule 25(d) requires Defendant Elder's office – the Office of the Bureau of Healthcare – to remain a party. The Court addresses each issue in turn.

### A. Metzger

"[A] non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference . . . absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* "This follows naturally from the division of labor within a prison." *Id.* "Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on." *Id.* Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain the division of labor. *Id.* Thus, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Id.* at 235.

Here, Plaintiff asserts that the Report was inconsistent in that it "found that the TAC plausibly alleged that Defendant Metzger had actual knowledge of Ms. London's serious medical need, her treatment, and its inadequacy, which is all that Section 1983 requires at the motion to dismiss stage." (D.I. 68 at 4). The Court disagrees. The Report actually stated, "allegations in the TAC regarding the January 2018 letter, the June 2019 letter, Metzger's weekly attendance at MDT meetings, and his review of Grievance 434598 plausibly show his knowledge of London's treatment and London's opinion that the treatment was inadequate." (D.I. 66 at 11). The Report did not say that because of these occurrences Metzger, himself, knew that the treatment was

9

inadequate or that Plaintiff was being mistreated.  It correctly stated that based on these, he knew that Plaintiff believed that it was inadequate at the time.[10]

Courts have dismissed a deliberate indifference to a serious medical need claim brought by an inmate, who "received some care" but complained about its "inadequacy or impropriety." *See McCray v. Williams*, 357 F. Supp. 2d 774, 781 (D. Del. 2005) ("The plaintiff may disagree with the medical treatment he [or she] is receiving, however, this does not support a § 1983 claim."); *see also Hairston v. Miller*, 646 F. App'x 184, 187-88 (3d Cir. 2016) (dismissing inmate's claims where he wanted "immediate surgery" but had "received continual care for his back pain" of physical therapy and medication and the correctional defendant-administrator's involvement was only administrative); *Capozzi v. Pigos*, 640 F. App'x 142, 143-44 (3d Cir. 2016) (rejecting inmate's deliberate indifference claim where prison doctors had provided medication and treatment but declined inmate's repeated requests for additional intervention).  Here, Plaintiff continued to receive treatment (though treatment she viewed as inadequate).  Without more, the January 2018 letter, the June 2019 letter, Metzger's weekly attendance at MDT meetings, and his review of Grievance 434598 do not support a deliberate indifference claim against Metzger.

Plaintiff's argument that Metzger had reason to believe her treatment options were delayed for a non-medical reason is not sufficient to assert Metzger's deliberate indifference.  It is true that "'if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out.'" *Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Ancata v.*

---

[10]   It appears that after Metzger retired, in late 2020, the adequacy (or lack thereof) of Plaintiff's care became clearer when Plaintiff's endocrinologist, Dr Marc Laufgraben explained that "hormone therapy had plateaued," that Plaintiff was "no longer receiving any positive effect from the maximum dosage he would prescribe to a transwoman" and that he was willing to provide a "written recommendation to JTVCC" that GCS was "an appropriate next step" for Plaintiff.  (D.I. 46 at 9).  That, however, does not support Plaintiff's claims against Metzger.

10

*Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). Such non-medical reasons include delaying care to impose suffering, *Archer v. Dutcher*, 733 F.2d 14 (2d Cir.1984), or delaying care because of a patient's inability to pay, *see Ancata*, 769 F.2d at 704. Here, however, the TAC alleges that the medical professionals involved in Plaintiff's treatment opined that "Ms. London[']s housing has a direct impact on her perceived lack of ability to express her experienced gender adequately, and dysphoria is then exacerbated." (D.I. 44 at 142). This discussion of the impact of Plaintiff's housing situation on her psychological wellbeing in the context of her diagnosed Gender Dysphoria is not plausibly characterized as a non-medical reason for purposes of Metzger's knowledge. As the Report found, "[t]o the contrary, based upon the pleadings at this stage, the opinions of the medical professionals align with the Standards of Care for the treatment of Gender Dysphoria outlined in the TAC, which specifies "psychotherapy to address the negative impacts and stigmas associated with living as a transgender person" and "living full time as one's desired gender." (D.I. 66 at 13). And as a nonmedical professional, Metzger was entitled to credit the opinions of medical professionals directly tying the severity of London's symptoms to her housing situation. *See Spruill,* 372 F.3d at 236. Thus, the claims against Metzger will be dismissed.

**B.     Richman**

As to Richman, the only assertion of personal involvement to Plaintiff's case is his review and denial of Grievance No. 434598. (D.I. 68 at 4). As with Metzger, Plaintiff does not assert that Richman is a medical professional who provided medical care. Also, as with Metzger, Plaintiff's citation to Grievance No. 434598 alleges Richman knew that Plaintiff found her treatment to be inadequate rather than that Richman believed it to be inadequate (or a mistreatment of her). Moreover, as the Report recognized, the mere denial of a Grievance is insufficient to state a claim for deliberate indifference claim against Richman. *See Smith v. D'Ilio*, 2020 WL 2079413,

at *4 (D.N.J. Apr. 29, 2020) ("Generally, a supervisory defendant's mere participation in the grievance process, without more, is insufficient to state a claim."); *Steedley v. McBride*, C.A. No. 10-215-GMS, 2014 WL 4461110, at *1 (D. Del. Sept. 9, 2014) ("[P]articipation in the after-the-fact review of a grievance is not enough to establish personal involvement."). Therefore, the claims against Richman are also dismissed.

### C. Section 1983

Plaintiff asserts that the Report "conflat[ed] the requirements for the complaint to survive at the motion to dismiss stage by confusing allegations, direct or circumstantial, that plausibly establish a prison official's actual knowledge of the risk of harm to the plaintiff with the elements of an exception to Section 1983 liability for prison officials who defer to the judgment of medical experts." (D.I. 68 at 6). In doing so, it appears that Plaintiff is arguing that the "adequacy" of medical treatments is not an essential element of deliberate indifference but a question of fact that cannot be decided on a motion to dismiss. (D.I. 68 at 6 n.6 (citing *Smith v. D'Ilio*, 2020 WL 2079413, at *4 (D.N.J. Apr. 29, 2020)). The Court disagrees. *D'Ilio* is an unlawful condition of confinement case that did not involve an inmate receiving ongoing medical care. Moreover, as Defendants state (D.I. 70 at 4 n.2), London's reliance on *Price v. Corr. Med. Servs.*, 493 F. Supp. 2d 740 (D. Del. 2007); *Davis v. Williams*, 572 F. Supp. 2d 498 (D. Del. 2008); *Smith v. Carroll*, 572 F. Supp. 2d 498 (D. Del. 2008); and *Baylis v. Taylor*, 475 F. Supp. 2d 484 (D. Del. 2007) is misplaced. *Price* and *Baylis* involved medical defendants, not non-medical prison administrators. *Davis* and *Carroll* found prison officials not liable for a deliberate indifference claim. None of these cases alter the Court's analysis as to Metzger and Richman.

**D.     Elder**

Plaintiff argues that the Report erred because Rule 25(d) requires Defendant Elder's Office – the Office of the Bureau of Healthcare – to remain a party because it is the actual party of interest. (D.I. 68 at 9).  The sum total of the response to this is "DOC Defendants reiterate their arguments from their Opening and Reply Brief regarding Elder.  [The Report] correctly held that the claims against Elder cannot survive."  (D.I. 70 at 10 (citing D.I. 66 at 15-16)).  Although the response to the objections is sorely lacking, the Court must agree.

The thrust of Plaintiff's argument is that the Report erred in dismissing Richman and if the claims against Richman survived, so should the claims against Elder.  (D.I. 68 at 9 (emphasis added) (the "TAC's allegations against Defendant Richman, ***and by extension, Defendant Elder***, readily meet the pleading requirements")).  Having found that the claims against Richman should be dismissed, however, Plaintiff's objection as to Elder have no basis and the claims against Elder must also be dismissed.

**IV     CONCLUSION**

For the foregoing reasons, Plaintiff's objections are OVERRULED and the Report is ADOPTED.  The motion to dismiss filed by defendants Dana Metzger and Marc Richman (D.I. 45) is GRANTED.  The motion to by defendants James Elder and Robert May (D.I. 50) is GRANTED as to Elder.  The case will proceed as to May.  An appropriate order will be issued.